## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHAIYA DARNELL<br>1424 Staple Street NE<br>Washington, DC 20002,<br><br>    Plaintiff,<br><br>    v.<br><br>RCX, LLC DBA STADIUM CLUB<br>2127 Queens Chapel Road NE<br>Washington, DC 20018,<br><br>SCOTT ROME<br>1225 19th Street NW<br>Washington, DC 20036,<br><br>RUDOLPH THOMAS<br>2127 Queens Chapel Road NE<br>Washington, DC 20018,<br><br>NATE JOHNSON<br>2127 Queens Chapel Road NE<br>Washington, DC 20018,<br><br>ANTHONY "DOE"<br>2127 Queens Chapel Road NE<br>Washington, DC 20018,<br><br>BEN "POE"<br>2127 Queens Chapel Road NE<br>Washington, DC 20018,<br><br>    Defendants. | Civil Action No.<br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### (Race and Color Discrimination; DC Wage Law)

Pursuant to Federal Rule of Civil Procedure Rule 3, Plaintiff Khaiya Darnell (hereafter "Plaintiff"), by her undersigned attorney, hereby files her Complaint.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f); and D.C. Code Ann. §§ 2-1401.01– 2-1404.04.

2. In or about November 27, 2017, Plaintiff filed a formal Charge of Discrimination in the DC Office of Human Rights Docket No.18-154 P(CN) / EEOC No. 10C-2018-00152.

3. The DC Office of Human Rights accepted Plaintiff's formal Charge of Discrimination as timely.

4. Defendant was duly notified about Plaintiff's administrative complaints and was given an opportunity to respond to her allegations.

5. This Complaint is filed more than 180 days after the filing of Plaintiff's administrative complaint was filed.

6. Plaintiff has exhausted the administrative remedies available to her under 42 U.S.C. §§2000e, *et seq.*, and all conditions precedent have occurred or been performed.

7. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§1391(b)(1) and 1391(c), as Defendant (hereinafter "Defendant") has extensive and deliberate contacts in this District and Division, including a business location at 2127 Queens Chapel Road, NW, Washington, DC 20018, at which Plaintiff performed work during her tenure with Defendant.

## II. THE PARTIES

8. Plaintiff is a resident of the District of Columbia and a former employee of Defendant.

9. Upon information and belief, Defendant RCX, LLC DBA STADIUM CLUB ("Club") is an adult entertainment venue in Washington DC.

10. Defendants ROME and THOMAS are listed as "Governors" of the business according to the DCRA.

11. Defendant JOHNSON is a supervising manager or owner of the "Club."

12. Defendants "DOE" and "POE" are general managers and supervisors at the "Club."

13. At all times relevant herein, Defendants had at least fifteen employees, and was therefore an "employer" within the meaning of Title VII.

### III. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

14. On or around June 2016, Plaintiff began her employment with Defendants as an exotic dancer.

15. During her employment with Defendants, Plaintiff worked one 8-hour shift on Thursdays of each week.

16. Before each shift during her employment at the "Club," Plaintiff paid the Defendants a "tip-in" of $40 before she was permitted to work.

17. At no point did the Plaintiff receive any wages or other payments for the hours during that she was permitted or suffered to work at the "Club".

18. Plaintiff was allowed to keep voluntary tips of varying amounts from the "Club's" customers during her 8-hour shift, after paying the required "tip-in" amount.

19. Defendants were aware of and exercised control over Plaintiff's work schedules and work duties.

a. During her employment, Plaintiff was required to submit a proposed work schedule each week that was subject to Defendants' acceptance, approval and control.

b. During her employment, Plaintiff was required to wear a dress or skirt over her costume while not performing.

c. During her employment, when Plaintiff was not performing on stage, she was required "walk the floor" to talk to guests and sell private or table dances.

d. During her employment, Plaintiff was subject to reprimand if she stood in one place for too long instead of "walking the floor."

e. During her employment, Plaintiff was required to promote the "Club" on her personal social media in order to be allowed to work.

f. During her employment, Plaintiff was required to wear her hair in specific styles that were approved by Defendants

g. At all relevant times, Defendants had the power to fire Plaintiff.

h. At all relevant times, Defendants had the power to control Plaintiff's work schedule.

20. Defendants misclassified Plaintiff as an independent contractor.

21. Defendants exercised managerial authority over Plaintiff.

22. On or about November 27, 2017, Plaintiff filed a claim for unpaid wages with the District of Columbia Department of Employment Services [DOES].

23. On or about April 10, 2018, DOES issued an Initial Determination that Defendant "Club" was to pay Plaintiff $2,470 (Two thousand four hundred seventy dollars) in

unpaid wages, as well as liquidated damages in the amount of $4,940 (Four thousand nine hundred forty dollars).

24. Plaintiff has not received any payments from any of the Defendants.

25. Plaintiff is African-American.

26. All of the dancers employed by Defendants were African-American or of African descent.

27. Plaintiff and the other dancers employed by Defendants were required to follow strict dress codes and appearance guidelines.

28. During her first week at the "Club", Plaintiff wore a wig of medium length, straight hair over her natural thick and curly hair.

29. Because of the nature of her act, wearing the wig was dangerous for Plaintiff as she risked entangling the hair in her high heels during her acrobatic pole-dancing performance.

30. Due to her concern, Plaintiff asked Defendant "Poe" if she could wear her hair in a "braided Mohawk" style.

31. Upon information and belief, a "braided Mohawk" is created by braiding the hair at the sides of the head, while building height with braids at the crown.

32. Upon information and belief, a "braided Mohawk" is suitable for both thick, curly Afro-textured hair as well as straight, smooth hair more typical of people of European descent.

33. Upon information and belief, Afro-textured hair can be dry and brittle, requiring specific care and protective hairstyles to avoid permanent damage and loss.

34. Over time, Plaintiff became concerned that her braided style, which required narrow, tight braids pulling her hair from her face, was causing damage to her hair.

35. The treatments and styling necessary to mask the natural texture of her hair were time-consuming and expensive to maintain.

36. Upon information and belief, "twists" are a classic style for Afro-textured hair.

37. Upon information and belief, textured styles such as "twists" showcase naturally Afro-textured black hair in unique ways.

38. Upon information and belief, "twists" are created when two strands of hair are twisted together until they resemble a rope.

39. Upon information and belief, the ability of strands of kinky or tightly curled hair to wrap themselves around each other prevents the twist from unraveling when done properly.

40. Upon information and belief, straight, smooth hair, as is more typical of people of European descent, cannot naturally be styled into "twists."

41. On August 10, 2017, Plaintiff reported to work with her natural hair in twists, and prepared to perform.

42. As Plaintiff prepared to perform, Defendant Doe telephoned the "house mom," an employee at the "Club" who was in the dressing room with Plaintiff.

43. While on the telephone with Defendant Doe, the "house mom" asked Plaintiff if she had a wig because she could not "have those twists here."

44. Plaintiff was told that she could not perform that night and that Defendant "Doe" required Plaintiff to leave the "Club."

45. As Plaintiff left the "Club," she asked Defendant "Poe" why she was being asked to leave, and was not being allowed to perform that night.

46. Defendant "Poe" responded that the decision "wasn't personal," and that "we have a requirement that the girls have their hair "done."

47. Plaintiff pointed out that her "twists" were "done" only two days before.

48. Defendant "Poe" said that he was not saying her hair was not "done," but that the Defendants did not like braids or twists for any of the "girls" because that is not how the Defendants "want the girls to look."

49. All of Defendants' performers are African-American women, and most are required to cover or disguise their natural hair texture.

50. Performers who are comparatively lighter-skinned, racially ambiguous, or with less Afro-textured hair can wear their natural hair.

51. On August 10, 2017, Plaintiff was constructively discharged from her employment with Defendant on the basis of color.

52. On August 10, 2017, Plaintiff was constructively discharged from her employment with Defendant on the basis of her personal appearance.

53. Any reason Defendant gives for the different terms and conditions of employment and discharge is pretext to discrimination against her due to her color and personal appearance.

54. As a result of the Defendant's actions, Plaintiff has suffered loss of income, emotional distress, and pecuniary damages.

### IV. STATEMENT OF CLAIMS
### Count I: Color Discrimination (Title VII)

55. Plaintiff adopts and incorporates by reference ¶¶ 1-54 above.

56. Defendant unlawfully discriminated against Plaintiff on the basis of her color in violation of Title VII.

57. Specifically, Defendant discriminated against Plaintiff by refusing to employ her unless she disguises the natural, Afro-texture of her hair and adopts a more "mainstream" or European appearance, while lighter skinned or racially ambiguous women are not required to comply with the policy.

58. As a result of Defendant's violations of Title VII, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

**Count II: Color Discrimination (DCHRA)**

59. Plaintiff adopts and incorporates by reference ¶¶ 1-54 above.

60. Defendant unlawfully discriminated against Plaintiff on the basis of her color in violation of D.C. Code §2-1402.11(a)(1).

61. Specifically, Defendant discriminated against Plaintiff by refusing to employ her unless she disguises the natural, Afro-texture of her hair and adopts a more European appearance.

62. Lighter skinned or racially ambiguous women are not required to comply with the policy.

63. As a result of Defendant's violations of D.C. Code §2-1402.11, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

**Count III: Personal Appearance Discrimination (DCHRA)**

64. Plaintiff adopts and incorporates by reference ¶¶ 1-54 above.

65. Defendant unlawfully discriminated against Plaintiff on the basis of her personal appearance in violation of D.C. Code §§2-1402.11(a) and 2-1402.11(a) (1).

66. Specifically, Defendant discriminated against Plaintiff by refusing to employ her unless she disguises the natural, Afro-texture of her hair and adopts a more European appearance, while lighter skinned or racially ambiguous women are not required to comply with the policy.

67. As a result of Defendant's violations of D.C. Code §2-1402.11, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

### Count IV: Unpaid Wages (D.C. Code § 32-1012)

68. Plaintiff adopts and incorporates by reference ¶¶ 1-54 above.

69. Defendant unlawfully failed to pay Plaintiff the requisite minimum wage for tipped workers under D.C. Code § 32-1003. Plaintiff was not paid at the time of discharge and has not been paid to date.

70. As a result of Defendant's violations of D.C. Code §32-1012, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

### Count V: Worker Misclassification (D.C. Code § 32-1301)

71. Plaintiff adopts and incorporates by reference ¶¶ 1-54 above.

72. Defendant unlawfully misclassified Plaintiff as an Independent Contractor when an employer-employee relationship existed pursuant to D.C. Code § 32-1301.

73. As a result of Defendant's violation of D.C. Code §32-1301, Plaintiff is entitled to treble damages.

## IV. REMEDIES SOUGHT

WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting her the following relief from Defendant:

   a. A declaratory judgment that defendant discriminated against Plaintiff, as alleged herein;

   b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

   c. Compensatory and punitive damages, pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

   d. Unpaid wages, and liquidated damages of treble the amount of unpaid pages, pursuant to D.C. Code §32-1301.

   e. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

   f. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

   g. Such other and further relief as to the Court seems just and warranted.

## VI. JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

*Edgar Ndjatou*

_____

EDGAR NDJATOU
McCree Ndjatou, PLLC
1828 L Street, NW, Suite 600
Washington, DC 20036
T: (202) 290-3724
F: (202) 370-7173
endjatou@mnlawyerspllc.com
*Plaintiff's Counsel*